# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
# IN RE: ASBESTOS LITIGATION

RAYMOND K. LEATHERS,     )
                      )
    Plaintiff,         )
                      )
    v.                )
                      )    C.A. No. N15C-11-224 ASB
UNION CARBIDE,       )
                      )
    Defendants.     )
                      )
                      )
                      )

Decided: November 8, 2017
## ORDER

*Upon Defendant Union Carbide's*
*Motion for Summary Judgment*. **GRANTED.**

Plaintiff, Raymond K. Leathers, ("Plaintiff") cannot satisfy the summary judgment criteria.[1] Plaintiff worked at Rowe Brothers Construction in Cranston, Rhode Island from 1967 through 1974. During this time, Plaintiff's job involved hanging sheetrock, applying joint compound and sanding walls in new homes. Plaintiff stated that he worked with two joint compounds: Georgia Pacific and National Gypsum "Gold Bond" joint compounds. As stated in its Motion, Union

---

[1] Super. Ct. Civ. R. 56; *Smith v. Advanced Auto Parts, Inc.*, 2013 WL 6920864, at *3 (Del. Super. Dec. 30, 2013); *see Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979); *Nutt v. A.C. & S., Inc.*, 517 A.2d 690, 692 (Del. Super. Ct. 1986); *In re Asbestos Litigation (Helm)*, 2012 WL 3264925 (Del. Aug. 13, 2012).

Carbide supplied manufacturers with an asbestos fiber under the name "Calidria."

According to Plaintiff, Georgia-Pacific used Union Carbide's Calidria from 1970 through May 9, 1977 and Georgia-Pacific used "Union Carbide's Calidria asbestos fibers in every formula of Ready-Mix joint compound it manufactured and sold from its Akron, New York plant" from 1970 through May 1977. However, according to Union Carbide, it sold Calidira to the Georgia-Pacific Akron, New York facility which distributed Georgia-Pacific products to the New York and New England area from April 1974 to April 1977. It is Plaintiff's contention that through Union Carbide's asbestos supplied to these joint compound companies, it is liable for Plaintiff's injuries.

The Court finds that Plaintiff has met his burden demonstrating, beyond mere speculation, that he may have been exposed to asbestos from Union Carbide's Calidria. However, the main issue on this Motion is whether Union Carbide owed Plaintiff a duty to warn. Union Carbide argues that summary judgment is appropriate because it did not have a duty to warn Plaintiff under Rhode Island law. Union Carbide argues that Rhode Island adopted Section 5 of the Restatement (Third) of Torts in *Buonanno*[2] and argues that the comments of this section relieves Union Carbide of liability.[3]  Plaintiff argues that *Buonanno* is factually different than the

---

[2] *Buonanno v. Colmar Belting Co., Inc.,* 733 A.2d 712, 715 (R.I. 1999).
[3] *See* Restatement (Third) of  Torts § 5.

case before this Court. The Rhode Island Supreme Court has adopted Section 5 of the Restatement (Third) of Torts.[4]  Section 5 provides:

> One engaged in the business of selling or otherwise distributing product components who sells or distributes a component is subject to liability for harm to persons or property caused by a product into which the component is integrated if:
> (a)    the component is defective in itself, as defined by this Chapter, and the defect causes the harm; or
> (b)    (1) the seller or distributor of the component substantially participates in the ingeneration of the component into the design of the product; and (2) the integration of the component causes the product to be defective, as defined by this Chapter; and (3) the defect in the product causes harm.

Union Carbide cites to comments (b) and (c) of this section on "raw materials" which essentially imposes no duty to warn where a buyer integrates a raw material into another product.[5] Rhode Island has not elaborated on the "bulk products" and "raw materials" defense, however other courts have.  In *Cimino v. Raymark Industries, Inc.,* the Fifth Circuit found that "raw asbestos" was not defective within Section 2 and Section 5 of the Restatement (Third) of Torts.[6]  Additionally, as Union Carbide cites in its reply, in *Riggs*, a Utah court found that "regardless of its dangerousness,

---

[4] *See Gray v. Derderian*, 365 F.Supp.2d 218, 237 (D. R.I. 2005)("[I]t is worth noting that in *Buonanno*, the landmark case in which the Rhode Island Supreme Court adopted Section 5…").
[5] *See* Restatement (Third) of Torts, § 5 cmt. a, b, c ("Product components include raw materials, bulk products, and other constituent products sold for integration into other products.").
[6] 151 F.3d 297, 334-35 (5th Cir. 1998).

Union Carbide's product could not be defectively designed or manufactured because it is a raw, unadulterated material."[7]  Because Rhode Island substantive law applies to this case, and Rhode Island has adopted the Restatement (Third) of Torts § 5, this Court finds that a Rhode Island court would consider Union Carbide's asbestos a raw material under this section. Union Carbide "mined and milled" this "short-fiber, tremolite-free, chrysotile asbestos fiber."  Like the court noted in *Riggs*, it cannot be "defectively designed" or manufactured because it is a raw unadulterated material. Because the material was not defective, Union Carbide did not owe Plaintiff a duty to warn. Based on this reasoning, Union Carbide's Motion for Summary Judgment is hereby **GRANTED.**

**IT IS SO ORDERED.**

/s/ Calvin L. Scott

The Honorable Calvin L. Scott, Jr.

---

[7] *Riggs v. Asbestos Corp. Ltd.*, 304 P.3d 61, 69 (Utah Ct. App. 2013).

4