# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| D. ROBERT FREEMAN and MELISSA FREEMAN, | ) ) ) | |
| Defendants Below, Appellants, | ) ) ) | C.A. No. N21C-09-081 EMD |
| v. | ) ) | |
| LESLIE CARTER and MEEGHAN CARTER, | ) ) ) | |
| Plaintiffs Below, Appellees, | ) ) | |
| and | ) ) | |
| MEGAN BROOMALL-FILLIBEN, ESQUIRE, | ) ) ) | |
| Additional Defendant Below, Appellee. | ) ) ) | |

Submitted:  August 10, 2022
Decided: November 15, 2022

*Upon Third-Party Defendant Broomall-Filliben's Motion for Summary Judgment upon Third-Party Plaintiffs Freemans' Third-Party Complaint*
***GRANTED***

Melissa Freeman and D. Robert Freeman, *pro se*.

Jeffrey M. Weiner, Esq., The Law Offices of Jeffrey M. Weiner, P.A., Wilmington, Delaware. *Attorney for Third-Party Defendant Megan Broomall-Filliben.*

Donald L. Gouge, Jr., Esquire, Wilmington, Delaware.  *Attorney for Plaintiffs Below, Appellees Leslie Carter and Meeghan Carter.*

**DAVIS, J.**

# I.    INTRODUCTION

This civil proceeding involves tort and contractual claims and comes to the Court on appeal from the Court of Common Pleas and the Justice of the Peace Court.  Third-Party Plaintiffs D. Robert Freeman and Melissa Freeman filed an answer to a complaint filed by Plaintiffs Below/Appellees Leslie Carter and Meeghan Carter.  The Freeman's answer also asserted counterclaims and third-party claims against Third-Party Defendant Megan Broomall-Filliben.[1]  The Third-Party Complaint initially asserted four causes of action against Ms. Broomall-Filliben: (i) Breach of Implied Contract; (ii) Negligent Misrepresentation; (iii) Fraud; and (iv) Contractual/Equitable Indemnification.[2]  Upon a motion, The Court dismissed the Negligent Misrepresentation and Fraud claims.[3]

Ms. Broomall-Filliben filed her Third-Party Defendant Broomall-Filliben's Motion for Summary Judgment upon Third-Party Plaintiffs Freemans' Third-Party Complaint (the "Motion") on April 5, 2022.[4]  In the Motion, Ms. Broomall-Filliben seeks summary judgment on the Breach of Implied Contract claim and the Contractual/Equitable Indemnification claim.[5]  The Freemans opposed the Motion.[6]  The Court held a hearing on the Motion on August 10, 2022.  At the conclusion of the hearing, the Court took the Motion under advisement.

For the reasons stated below, the Court **GRANTS** the Motion.

---

[1] D.I. No. 1, Ex. B.
[2] *Id.*
[3] D.I. No. 22.
[4] D.I. No. 31.
[5] D.I. No. 31. Third-Party Defendant Broomall-Filliben's Motion for Summary Judgment Upon Third-Party Plaintiffs Freemans' Third-Party Complaint (hereinafter, "Broomall-Filliben Mot. for SJ").
[6] D.I. No. 33.

## II.    RELEVANT FACTS

In September 2015, the Freemans leased a house (the "House") in Delaware to Leslie Carter (later with Meeghan Carter, the "Carters").[7]  In February 2019, the Freemans decided to place the House for sale.[8]  On February 25, 2019, the Freemans terminated the lease with the Carters effective April 30, 2019.[9]

The Carters secured financing and planned to purchase the house.[10]  On May 8, 2019, the Freemans were informed that Ward & Taylor would be representing the Carters.[11] Ms. Broomall-Filliben is a real estate attorney at Ward & Taylor.  The Freemans contend that Ms. Broomall-Filliben was also representing them as sellers in a limited capacity.[12]  On February 28, 2020, the Freemans rescinded their offer to sell the house to the Carters.[13]

On September 14, 2021, Ms. Broomall-Filliben filed a Motion to (Partial) Dismiss Third-Party Plaintiffs' Third-Party Complaint ("Broomall-Filliben Motion to Dismiss").[14]  On October 11, 2021, the Freemans filed a Response to Ms. Broomall-Filliben's Motion to Dismiss.[15]  As stated above, on February 24, 2022, this Court entered an Order that dismissed the Negligent Misrepresentation and Fraud claims of the Third-Party Complaint.[16]  The only remaining counts against Ms. Broomall-Filliben are the Freemans' Breach of Implied Contract and Contractual/Equitable Indemnification claims.[17]

---

[7] Motion ¶ 3.
[8] *Id.* ¶ 4.
[9] *Id.*
[10] *Id.*
[11] *Id.* ¶ 7.
[12] D.I. No. 33. Third-Party Plaintiffs' Response to Third-Party Defendant's Motion for Summary Judgment (hereinafter, "Freemans Response"), ¶ 4.
[13] Broomall-Filliben Mot. for SJ, ¶ 10.
[14] D.I. No. 2. Third-Party Defendant Broomall-Filliben's Motion to (Partial) Dismiss Third-Party Plaintiffs' Third-Party Complaint (hereinafter, "Broomall-Filliben Mot. to Dismiss").
[15] D.I. No. 11. Defendants Below, Appellants Response to Third-Party Defendant Broomall-Filliben's Motion to (Partial) Dismiss Third-Party Plaintiff's Third-Party Complaint.
[16] Broomall-Filliben Mot. for SJ, ¶ 1.
[17] *Id.*

On April 5, 2022, Ms. Broomall-Filliben filed the Motion  On May 4, 2022, the Freemans filed a Response to Ms. Broomall-Filliben's Motion for Summary Judgment (the "Response").[18] On May 24, 2022, Ms. Broomall-Filliben filed a Reply in Support of her Motion for Summary Judgment (the "Reply").[19]  The Court held a hearing on the Motion, the Response and the Reply on August 10, 2022.  After the hearing, the Court took the Motion under advisement.

For the reasons set forth below, the Court **GRANTS** the Motion.

### III.    PARTIES' CONTENTIONS

#### A.  THE MOTION

Through the Motion, Ms. Broomall-Filliben argues that she is entitled to summary judgment on all remaining third-party claims.[20]  The remaining claims are the Breach of Implied Contract and Contractual/Equitable Indemnification.[21]  Ms. Broomall-Filliben claims that there was never a valid contract between herself and the Freemans.  Ms. Broomall-Filliben contends "it is true that the attorney owes a general duty to the judicial system, [however] it is not the type of duty which translates into liability for negligence to an opposing party where there is not foreseeable reliance by that party on the attorney's conduct."[22]  Ms. Broomall-Filliben also asserts she owed no special duty to the Freemans.[23]

#### B.  THE RESPONSE

The Freemans oppose summary judgment, contending that there are genuine disputes as to material facts.  The Freemans claim Ms. Broomall-Filliben was working as their real estate

---

[18] *See* Freemans Response.
[19] D.I. No. 36. Additional (Third-Party) Defendant Megan Broomall-Filliben's Reply in Support of her Motion for Summary Judgment (hereinafter, "Broomall-Filliben Support Motion").
[20] Broomall-Filliben Mot. for SJ, ¶ 14.
[21] *Id.* ¶ 1.
[22] *Id.* ¶ 12.
[23] *Id.*

attorney on a limited basis—*i.e.,* the real estate transaction involving the House.[24]  In addition, the Freemans assert that Ms. Broomall-Filliben entered an implied contract of representation with the Freemans. The Freemans maintain an April 24, 2019, Agreement of Sale ("AOS") created a binding contract between themselves and Ms. Broomall-Filliben.[25]  Further, the Freemans argue Ms. Broomall-Filliben breached her duties when she failed to inform the Freemans of the Carters' breach of the AOS. The Freemans claim the breach denied them the opportunity to cancel the AOS and mitigate damages.[26]

Ultimately, the Freemans appear to be arguing that Ms. Broomall-Filliben breached her attorney-client (contractual) duty to the Freemans and that allowed the Carters to breach the AOS.

## IV.    STANDARD OF REVIEW

The standard for review on a motion for summary judgment is well-settled. Summary judgment may only be granted when there are no genuine disputes as to material facts.[27] Specifically, the Court must "view the evidence in the light most favorable to the non-moving party."[28]  When faced with a motion for summary judgment the trial court must "identify disputed factual issues whose resolution is necessary to decide the case, but not to the decide such issues."[29] The moving party bears the initial burden of proving that there are no material issues of fact.[30]  If the motion is properly supported then the burden shifts to a non-moving party to demonstrate that a material issue of fact is present.[31]

---

[24] Freemans Response, ¶¶ 4 and 7.
[25] *Id.* ¶ 5.
[26] *Id.* ¶ 11.
[27] *Merrill v. Crothall-American, Inc.*, 606 A.2d 96, 99 (Del. 1992) (citing *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979)).
[28] *Id.* (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970)).
[29] *Id.* (citing *United States v. Diebold, Inc.*, 369 U.S. 654 (1962)).
[30] *Moore*, 405 A.2d 679, 680 (Del. 1979) (citing *Ebersole v. Lowengrub*, 180 A.2d 467 (Del. 1962)).
[31] *Id.* (citing *Hurtt v. Goleburn*, 330 A.2d 134 (Del. 1974)).

# V.    DISCUSSION

## A.  MS. BROOMALL-FILLIBEN IS ENTITLED TO SUMMARY JUDGMENT ON THE FREEMANS' BREACH OF CONTRACT CLAIM.

### 1.  No Valid Contract Exists

A valid contract exists when (i) the parties intended for the contract to bind them, (ii) the terms of the contract are sufficiently definite, and (iii) the parties exchange legal consideration.[32] An implied contract "is one inferred from the conduct of the parties, though not expressed in words. The parties' intent and mutual assent to an implied in-fact-contract is proved through conduct rather than words."[33]

Ms. Broomall-Filliben contends there is no valid contract between herself and the Freemans.  Ms. Broomall-Filliben maintains she only represented the Carters as the purchasers of the house.[34]  Ultimately, Ms. Broomall-Filliben argues that the Freemans cannot meet the first element of a valid contract.  The Freemans claims that Ms. Broomall-Filliben undertook duties to assist the Freemans with completing the sale which undertaking created an implied contract.[35]

Ms. Broomall-Filliben concedes she sent a blank contract to the Freemans for the sale; however, she notes that she was not otherwise involved in the negotiation of the AOS.[36]  In support, Ms. Broomall-Filliben contends she was not a recipient or involved with the April 16, 2019 Email ("April 16 Email").[37]  In the April 16 Email the Carters inform the Freemans they will review the AOS.[38]  The Freemans argue the April 16 email is the original AOS and that they

---

[32] *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010).

[33] *Clouser v. Marie*, 2022 WL 453551, at *3 (Del. Super. 2022) (citing *Capital Mgmt. Co. v. Brown*, 813 A.2d 1094, 1098 (Del. 2002)).

[34] Broomall-Filliben Mot. for SJ, ¶ 7.

[35] Freemans Response, ¶ 11.

[36] Broomall-Filliben Mot. for SJ, ¶ 5, 9.

[37] Broomall-Filliben Support Motion, ¶ 5.

[38] *Id.*

had sent it to Ms. Broomall-Filliben.[39]  However, the Freemans do not offer any evidence that Ms. Broomall-Filliben received the April 16 email, or that Ms. Broomall-Filliben helped in any with further negotiations.  Ms. Broomall-Filliben offers multiple instances of continued communications directly between the Freemans and the Carters.[40]  These communications do not include Ms. Broomall-Filliben.  The facts do not support the argument that Ms. Broomall-Filliben undertook any action other than forwarding a form document.  All subsequent discussions were between the Freemans and the Carters.  Ms. Broomall-Filliben was not involved in these negotiations and/or communications.

The Freemans argue an implied contract existed between themselves and Ms. Broomall-Filliben.  The Freemans contend Ms. Broomall-Filliben undertook the duty of helping the Freemans complete the correct forms for the sale and providing updates on scheduling and closing delays.[41]

Further, the Freemans argue Ms. Broomall-Filliben should have been aware that the Freemans believed Ms. Broomall-Filliben was also working as their real estate attorney.[42]  The Freemans contend because the Freemans and the Carters had previously worked with a real estate agent in a dual capacity that their belief that Ms. Broomall-Filliben was their attorney was reasonable.[43]  However, on May 8, 2019 the Freemans received a letter from Ms. Broomall-Filliben's firm, Ward & Taylor, that the firm represented the Carters.[44]  There is no evidence that the Freemans attempted to clarify if Ms. Broomall-Filliben would also be working as their attorney.

---

[39] Freemans Response, ¶ 5.
[40] Broomall-Filliben Mot. for SJ, ¶ 9.
[41] Freemans Response, ¶ 11.
[42] *Id.*
[43] *Id.*
[44] Broomall-Filliben Mot. for SJ, ¶ 7.

In addition, the record is devoid of any evidence that Ms. Broomall-Filliben took on the role of the Freemans' attorney. While Ms. Broomall-Filliben was working with the Carters in the process of purchasing the Freemans' home it is expected she would have to communicate with the Freemans. However, it does not appear Ms. Broomall-Filliben entered into an agreement, explicit or implicit, to represent the Freemans.

The Freemans contend Ms. Broomall-Filliben had implied contractual duties to review and communicate with the parties about the AOS and to convey accurate and truthful reasons for closing delays to the Freemans.[45] The Freemans argue Ms. Broomall-Filliben breached these duties by not disclosing the Carters' modifications to the AOS and that Quicken Loans had denied the Carters' mortgage application.[46]

Ms. Broomall-Filliben offers communication between the Freemans and the Carters as evidence that she was not a part of the continued negotiations.[47] On September 6, 2019, the Carters emailed the Freemans that "although qualified for a mortgage, balancing cash and paying the asking price contributes to the challenge."[48] The Freemans responded "[o]k, thanks. Keep us posted."[49] On October 23, 2019, the Carters emailed the Freemans that the mortgage "situation is status quo" and that Cardinal Financial was the Carters mortgage company.[50] At this point the Carters had pushed back the original April 30 closing date multiple times directly with the Freemans.[51] Ms. Broomall-Filliben does not appear to have been a party to these emails.

Following the April 16 Email Ms. Broomall-Filliben does not appear to have any further communication with the Freemans regarding the AOS. Ms. Broomall-Filliben argues on April

---

[45] Freemans Response, ¶ 11.
[46] *Id.*
[47] Broomall-Filliben Mot. for SJ, ¶ 9.
[48] *Id.*
[49] *Id.*
[50] *Id.*
[51] *Id.*

8

24, 2019, the Carters made changes to the contract the Freemans signed on April 16, 2019, which constitutes a counteroffer. The Freemans dispute and deny that they agreed to the Carters' counteroffer.[52] It appears that Ms. Broomall-Filliben points to this discrepancy as evidence that she was not involved in contract negotiations regarding the AOS.

In response, the Freemans argue Ms. Broomall-Filliben failed to inform them that the Carters attempted to modify the agreement.[53] The Freemans contend the April 24 AOS modifications should have prompted Ms. Broomall-Filliben to disclose the issues to the Freemans.[54] The Freemans argue the modifications would interfere with Ms. Broomall-Filliben's ability to schedule a closing, which the Freemans argue was Ms. Broomall-Filliben's duty.[55] However, Ms. Broomall-Filliben has offered evidence that the Freemans and Carters continued to communicate and push back the closing date without Ms. Broomall-Filliben's assistance.

The Court finds there are no genuine issues as to material facts and that Ms. Broomall-Filliben is entitled to judgment on the Breach of Implied Contract Claim. The record—when viewed in a light most favorable to the Freemans—does not support a contractual relationship between the Freemans and Ms. Broomall-Filliben. Ms. Broomall-Filliben initially notified the Freemans that she and her firm represented the Carters. In addition, Ms. Broomall-Filliben never acted as the lawyer of the Freemans, provided legal advice to the Freemans or involved herself in the discussions between the Carters and the Freemans.

---

[52] Freemans Response, ¶ 5.
[53] *Id.* ¶ 11.
[54] *Id.* ¶ 12.
[55] *Id.*

## 2. *Ms. Broomall-Filliben did not owe the Freemans a duty.*

Absent an express agreement a lawyer-client relationship can still be implied. A lawyer-client relationship may be inferred "from the conduct of the parties."[56] In order for an implied lawyer-client relationship to be found, "there would have to be, at the very least, a preexisting relationship that would create a reasonable expectation on the 'client's' part that the attorney was representing his [or her] interests, and reliance by the client on that expectation."[57] However, "[t]he Court will not extend an attorney's duty to a third-party when an adversarial relationship exists between the parties."[58]

In Delaware, an attorney may provide legal services to multiple parties in the real estate transaction.[59] Further, real estate settlements, which do not involve foreclosure or threatened foreclosure, are not generally considered adversarial.[60] Therefore, an attorney will be found to owe a duty if the client can show the attorney "committed fraud or collusion, that it had privity of contract, or that it was the intended beneficiary of services."[61]

Ms. Broomall-Filliben argues she does not owe any duty to the Freemans. Ms. Broomall-Filliben points to the fact that her law firm sent the Freemans an email explaining that Ms. Broomall-Filliben would be representing the Carters.[62] Ms. Broomall-Filliben does not offer any other evidence as to her relationship with the Freemans. Ms. Broomall-Filliben relies on *Nichols v. Twilley, Street & Braverman, P.A.*, to illustrate her lack of duty to a non-client.[63]

---

[56] *Korotki v. Hiller & Arban, LLC.*, 2017 WL 2303522, at *6 (Del. Super. 2017) (internal citation omitted).
[57] *Id.* (citing *SBC Interactive, Inc. v. Corporate Media Partners*, 1997 WL 770715, at *4 (Del. Super. 1997).
[58] *Farmers Bank of Willards v. Becker*, 2011 WL 3925428, at *4 (Del. Super. 2011) (citing *Keith v. Sioris*, 2007 WL 544039, at *6).
[59] *Id.* (internal citations omitted).
[60] *Id.*
[61] *Id.*
[62] Broomall-Filliben Mot. for SJ, ¶ 7.
[63] *Id.* ¶ 12.

In response, the Freemans contend that the Carters refused to work with the Freemans real estate agent and the Freemans were unwilling to move forward without expert help.[64] After the Freemans and Carters stopped using the Freemans' real estate agent the Carters recommended Ms. Broomall-Filliben.[65] The Carters did not advise the Freemans to seek different representation.[66] The Freemans maintain that Ms. Broomall-Filliben then took on duties on behalf of the Freemans that were not already owed to the Carters.[67] Ultimately, the Freemans contend the Carters and Freemans had previously used a joint real estate agent and Ms. Broomall-Filliben should have been aware she was representing both parties.

The Freemans may have believed Ms. Broomall-Filliben was their attorney; however, Ms. Broomall-Filliben's conduct does not establish an implied duty. The factual record does not provide evidence that Ms. Broomall-Filliben offered legal advice to the Freemans or otherwise acted as their attorney. Ms. Broomall-Filliben's firm provided the Freemans with a letter expressly stating that they were representing the Carters. The Freemans did not seek out Ms. Broomall-Filliben's advice in any exchanges with the Carters. Further, the shared real estate agent situation between the Freemans and Carters did not involve Ms. Broomall-Filliben. The prior situation with a shared real estate agent does not establish a situation where Ms. Broomall-Filliben should have been aware that the Freemans viewed her as their attorney.

## B. MS. BROOMALL-FILLIBEN IS ENTITLED TO SUMMARY JUDGMENT ON THE FREEMANS' CONTRACTUAL/EQUITABLE INDEMNIFICATION CLAIM.

Delaware will enforce indemnification when the intention to indemnify appears in the terms of the agreement.[68] Ms. Broomall-Filliben does not directly address the

---

[64] Freemans Response, ¶ 4.
[65] *Id.*
[66] *Id.* ¶ 11.
[67] *Id.*
[68] *Howard, Needles, Tammen & Bergendoff v. Steers, Perini & Pomroy*, 312 A.2d 621, 624 (Del. 1973).

11

Contractual/Equitable Indemnification claim outside of her argument for summary judgment on the implied contract claim. However, this claim must arise out of the Implied Contract claim. Because the Court finds there was no implied contract between Ms. Broomall-Filliben and the Freemans, the Court also finds that there cannot be a contractual indemnification claim. Accordingly, the Court will grant summary judgment in favor of Ms. Broomall-Filliben on the Contractual/Equitable Indemnification claim.

## VI.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** the relief sought in the Third-Party Defendant Broomall-Filliben's Motion for Summary Judgment upon Third-Party Plaintiffs Freemans' Third-Party Complaint and **ENTERS** judgment in favor of Ms. Broomall-Filliben on the Freemans' Breach of Implied Contract claim and Contractual/Equitable Indemnification claim of the Third-Party Complaint.

**IT IS SO ORDERED**

Dated: November 15, 2022
Wilmington, Delaware

*/s/ Eric M. Davis*
Eric M. Davis, Judge

cc:    File&ServeExpress
         Melissa and D. Robert Freeman (by mail)

12